## J. M. LONG *v.* THE STATE.

| 1 | 709 |
| 38 | 657 |

1. CRIMINAL DISTRICT COURTS.—The Constitution of 1876, Article 5, section 1, makes provision for the various courts in which the whole judicial power of the state is vested, and in effect has abolished all the criminal district courts created while the Constitution of 1869 was in force, except the criminal district court of Galveston and Harris counties, which is expressly preserved. The various laws, therefore, which established the courts thus abolished are not within the purview of the 17th section, of Article 16 of the Constitution of 1876, retaining in force the mass of the general laws of the state; but, on the contrary, are abrogated by reason of their repugnancy to the provisions of Article 5, section 1, above referred to.

2. SAME—TRANSFER OF CAUSES.—This court takes judicial cognizance of the fact that the city of Waco is within the county of McLennan; and, therefore, the district court of McLennan county, under the operation of the Constitution of 1876, and of the act of May 30, 1876 (Laws, 12), acquired jurisdiction of a felony case pending in the criminal court of the city of Waco, when this latter tribunal was abolished as above indicated.

3. Jurors.—The jury law, enacted August 1, 1876, is a compliance with the requirement of the new Constitution that the legislature should "prescribe by law the qualifications of grand and petit jurors."

4. Recital of Record.—As embodied in the judgment of the court below, the verdict of the jury assessed "five years'" imprisonment in the penitentiary against the accused; but, as set out in a motion in arrest of judgment, the word "years" was not in the verdict. This court would not be warranted in accrediting the recital in the motion in contradiction of the judgment entry.

5. Charge of the Court.—A charge may be erroneous by reason of giving undue influence to collateral facts, or by laying too much stress on comparatively immaterial considerations, so as to divert the minds of the jury from the main issue. See the opinion in this case for an illustration.

Appeal from the District Court of McLennan. Tried below before the Hon. X. B. Saunders.

The indictment impleaded Doc Long and W. A. Carlin, as well as the appellant, and charged all three as principals. There was no witness testified who saw the shot fired by which the deceased, W. C. Lillard, came to his death. The principal facts of the case are summed up in the opinion of this court as satisfactorily as is practicable within any reasonable space.

The affidavit of the foreman of the jury, referred to in the opinion, very positively alleged that the verdict, when rendered, was not defective as charged in the motion in arrest of judgment, and that if the word "years" was not still in the verdict it was because it had been changed since its rendition.

*Herring, Anderson & Kelley*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

Winkler, J.    The appellant and two others were indicted in the criminal court of the city of Waco for the murder of one W. C. Lillard, alleged to have been committed in McLennan

county on the 6th day of January, 1876, and was tried in the district court of McLennan county.   On the trial below a severance was had, and the appellant was alone placed upon trial, which resulted in a verdict of conviction of murder in the second degree, the punishment being assessed by the jury at confinement in the state penitentiary for a period of five years, and judgment rendered accordingly ; from which an appeal is taken to this court, and a reversal of the judgment is sought on the following assignment of errors :

1st. The court erred in its charge to the jury.

2d. The verdict of the jury is not warranted by the facts in the case.

3d. The court erred in overruling defendant's motion for new trial.

4th. The court erred in overruling defendant's application for a continuance.

The grounds set out in the motion for a new trial are the following :

" 1st. The court erred in its charge to the jury.

" 2d. The court erred in refusing the charges, asked by defendant, Nos. 1 and 2.

" 3d. The court erred in charging, under the facts of the case, that the jury could find the defendant guilty of murder in the second degree.   The jury found their verdict contrary to the law and the evidence of the case."

There is in the record a bill of exceptions, which involves the following propositions.   It is asserted : " 1st. That the court had no jurisdiction of the case, because there is no law authorizing the transfer of this case from the criminal court of the city of Waco, where it originated, to the district court of McLennan county, Texas.   2d. And, further objecting, defendant says that there is no law prescribing the qualification of jurors in capital felony cases."   Which objections were overruled by the court, and to the ruling a bill of exceptions was taken.

As this question of jurisdiction has been presented, it becomes necessary to inquire what were the facts of the case as sworn to, and of which we are required to take cognizance, and whether any, and, if so, what, provision has been made to meet the exigencies of the situation.

It appears from the record that the indictment was found and presented in the criminal district court of the cities of Waco, Marlin, and Calvert, a tribunal created by an act of the legislature, approved April 20, 1874, and the supplemental act of 1875, for the administration of the criminal law of the state in the county of McLennan, in which was situated the city of Waco, in the county of Falls, in which was situated the city of Marlin, and in Robertson county, wherein is situated the city of Calvert. This criminal court continued to exist until the present state Constitution, which went into force on the 18th day of April, 1876, took effect.

By the 1st section, of the 5th Article, of the Constitution it is prescribed that:

"The judicial power of this state shall be vested in one supreme court, in a court of appeals, in district courts, in county courts, in commissioners' courts, in courts of justices of the peace, and in such other courts as may be established by law. The legislature may establish criminal district courts, with such jurisdiction as it may prescribe, but no such court shall be established unless the district includes a city containing at least thirty thousand inhabitants, as ascertained by the census of the United States, or other official census; provided, such town or city shall support such criminal district court when established. The criminal district court of Galveston and Harris counties shall continue with the district, jurisdiction, and organization now existing by law until otherwise provided by law."

By this section it was evidently the intention of the framers of the Constitution to abolish all the criminal district courts then in existence, except that then existing in

:and for the counties of Galveston and Harris. This intention is manifested in two ways : first, by declaring the courts by name in which the whole judicial power of the :state shall be vested, save that authority is given the legislature to establish by law such other courts as it may see fit to establish, and giving authority for the establishment of criminal district courts in such districts only as shall "include a city containing at least thirty thousand inhabitants," and by making especial provision for the continuation of the criminal district court of the counties of Galveston and Harris. This intention is so clearly manifested by the section above set out as not to admit of controversy or construction.

The laws creating criminal district courts are not among the laws retained by the change created by the adoption of the state Constitution now in force. The will of the framers of that instrument on the subject is expressed in section 48 of the general provisions of the Constitution, Article 16, as follows : "All laws and parts of laws now in force in the state of Texas, which are not repugnant to the Constitution of the United States or to this Constitution, shall continue and remain in force as the laws of this state until they expire by their own limitation, or shall be amended or repealed by the legislature." The intention and effect of this section is to continue in force the great body of the laws in force at the time the Constitution went into effect, which were not repugnant to, or in conflict with, the Constitution of the United States and of this state, and no other. By declaring which laws should continue in force, they excluded all others, agreeably to the maxim, *expressio unius est exclusio alterius.*

So it must be apparent it was not intended to retain in force the laws enacting these criminal district courts, any further than as to the exception named ; not only because these laws are not included within the provision continuing

the laws then in force generally, but because those laws providing for these criminal districts are repugnant to the provisions of section 1 of Article 5.

The criminal district court of the city of Waco being abolished by the present organic law, let us next inquire whether any, and, if so, what, provision has been made for the trial and determination of the causes pending in this court at the time of its abolition.

The first legislature of the state which assembled under the present Constitution, which abolished the criminal courts, except as before stated, passed an act, which was approved and took effect on and after the 30th day of May, 1876, entitled " An act to provide for the transfer of the cases in the late criminal courts of the state to the district courts, and to legalize the proceedings of the district courts in certain cases," by which it is provided " that the district courts of the several counties in the state wherein criminal courts have heretofore been established, under section 1, Article 5, of the Constitution of 1869, and wherein such criminal courts have been abolished by the adoption of the present Constitution, shall take control of, hear, and determine all causes in said criminal courts, in their respective counties, over which said district courts have jurisdiction; and all parties now under bond or recognizance to appear before said criminal courts, to answer charges of felony, shall appear and answer before the respective district courts having jurisdiction of their respective cases."

We know, judicially, that the criminal court of the city of Waco is situated within the county of McLennan, and that the district court of McLennan county, at the time this trial was had, had jurisdiction to hear and determine this case.

The 2d proposition contained in the bill of exceptions, namely, " that there is no law prescribing the qualifications of jurors in capital felony cases," cannot be maintained.

The Constitution, section 19, Article 16, makes it the duty of the legislature to " prescribe, by law, the qualifications of grand and petit jurors." The jury law passed by the fifteenth legislature (General Laws, 78) meets the demand of the Constitution.

The propositions, therefore, embraced in the bill of exceptions were ruled correctly against the defendant.

One other question raised by the record it is proper to notice. The defendant, after trial and conviction, moved in arrest of judgment, for reasons set out in the motion, as follows : " That, although the jury find the defendant guilty, they do not affix any penalty ;" and then purports to set out the verdict, as follows : " We, the jury, find the defendant guilty of murder in the second degree, and fix his punishment at five imprisonment in the state penitentiary." From all we can gather from the record we suppose that when the jury first presented their verdict the word *years,* which should have followed the word *five,* had been inadvertently omitted, and that the omission being discovered on presenting the verdict, it was corrected at the time by the jury, under the direction of the court. We can come to no other conclusion, because by the verdict of the jury, which is embodied in the judgment of the court, the time is fixed at *five years.*

We would not feel warranted in disturbing the verdict of the jury simply on the unsupported statement in the motion, when the effect would be to contradict the recitals contained in the solemn record of the judgment of the court. It is no ground of complaint, but, on the contrary, it is eminently proper in the court, when the jury returned their verdict into court, to see that it was in proper form before receiving it and discharging the jury from the consideration of the case. This is the most favorable view we can take of the subject, independent of the facts stated in the affidavit of the foreman of the jury.

Having disposed of those subjects which are so set out in the record as to at least invite, if they did not require, consideration, and with the remark that we are at a loss to find any reasonable, or even plausible, excuse for thus unnecessarily incumbering the case with positions wholly untenable, we will pass from them to a consideration of what we conceive to be the important questions involved in the determination of the case.

It appears from the evidence that, on the night preceding the homicide, certain property—namely, two plows—had been stolen, and the deceased and other persons were engaged in ferreting out the particulars of the theft of the plows, and endeavoring to discover and arrest those who had committed the theft; and, whilst being so engaged, the deceased, being at the time separated from his companions, lost his life, being shot and killed; and for his murder the appellant was put upon his trial.

The fundamental error committed on the trial consisted in attaching undue importance to the theft of the property stolen, and the fact that the deceased came to his death whilst engaged in attempting its recovery and the arrest of the offender, and to such an extent as to unavoidably divert the attention of the jury from the main subject for their consideration—namely, the guilt or innocence of the accused of the crime of having taken the life of the deceased, under circumstances which rendered him liable to the law as his murderer. This undue prominence to a comparatively immaterial and unimportant question cannot fail to attract attention in the examination of the witnesses, as well as in the general charge given by the court to the jury, and in the instructions which were asked on the part of the accused and refused by the court.

Whilst the law gives its protection to those who take life in certain emergencies—either to prevent the commission of certain crimes, or in attempting to effect the arrest or pre-

vent the escape of the offender—no such protection is afforded
to those who take life either in the commission of crime, or
in avoiding arrest, or in effecting the escape of the perpe-
trator of crime.   This distinction has been to a great degree
overlooked or disregarded on the trial of this cause in the
court below, and to such an extent as that it cannot have
failed of operating prejudicially to the rights of the accused.

In support of these views we make the following extracts
from the charge of the court.   After giving to the jury the
statutory definition of murder, and the statutory distinction
between murder of the first and murder of the second
degree, and giving an instruction on the subject of malice,
to be noticed hereafter, the charge proceeds :

" 4th. If the jury believe from the evidence, beyond a
reasonable doubt, that the two Joneses and Carlin were
jointly concerned in the theft of the two plows, the one the
property of J. N. Hart and the other of Ann Rhodes, and
were acting together in carrying the same away with a
fraudulent intent after they were stolen, or that J. M. Long
received them in his wagon with a fraudulent intent, or
knowing them to be stolen, and, while so acting together,
the deceased, W. C. Lillard, came up to them, unarmed,
and was by either one of them, so acting together, killed,
with a sedate, deliberate mind and formed design, by a
pistol, in attempting to reclaim the stolen plows for
the lawful owners, and that the killing was to prevent the
recovery of the stolen property, or to prevent the arrest of
the guilty parties, and that immediately they fled together,
then, it matters not which of them fired the fatal shot,
they are all equally guilty ; and unless the defendant, J.
M. Long, has shown, by some act or word on his part,
that he tried to prevent, or did not encourage or approve,
the killing, you will find him guilty of murder in the first
degree, and say so by your verdict, and fix his punishment
at death, or imprisonment for life in the state penitentiary.

"5th. All persons are principals who are guilty of acting together in the commission of an offense. When an offense is actually committed by one or more persons, but others are present, and, knowing the unlawful intent, aid by acts, or encourage by words or gestures, those actually engaged in the commission of the unlawful act, or who, at the time of the commission of the offense, endeavor to secure the safety or concealment of the offenders, they are principal offenders, and may be prosecuted or convicted as such.

"6th. If the jury have a reasonable doubt as to whether the killing was committed with a sedate, deliberate mind and formed design, but that Lillard was killed under the other circumstances mentioned in the 4th charge, you will find the defendant, James M. Long, guilty of murder in the second degree, and say so by your verdict, and affix his punishment at confinement in the state penitentiary for a period of not less than five years."

From the foregoing free and literal extracts it will be seen that, when the court comes to instruct the jury as to the law of the case as made by the evidence, commencing with the form of the charge set out as above, that importance is attached to, and stress is laid upon, the subject of the theft of the property said to have been stolen; and the guilt or innocence of the party charged with the crime of murder is made to depend, in a great measure, upon what the jury may believe the facts to be with regard to the theft of the property, and attending the deceased in his search after it, and his efforts at its recovery and the detection and arrest of the thief. And, passing down through the 5th instruction and arriving at the 6th, the degree of murder of which the jury may convict is made again to depend upon the evidence as to the stolen property, and as to whether the deceased lost his life "under the circumstances mentioned in the 4th charge."

We are of the opinion these charges were erroneous, not

only for the reasons above stated, but because they were not a setting forth distinctly the law applicable to the case, as required by Article 594 of the Code of Criminal Procedure, and because they are in conflict with the law which prohibits the judge from discussing the facts or summing up the testimony in the charge. Pasc. Dig., Arts. 3059, 3060. If this charge was not a summing up of the testimony, it was not applicable to the evidence.

We are of opinion, further, that in the concluding paragraph of the charge, where the jury are exhorted as follows, " They will look to all the facts and all the circumstances of the case in a spirit befitting the high and important interests involved, and, having a due regard both for the vindication of the majesty of the law and the safeguards thrown around the accused by the law, render such verdict as their enlightened consciences shall commend," militates against the spirit of the law, which provides that " it is beyond the province of a judge, sitting in criminal causes, to discuss the facts, or use any argument in his charge calculated to rouse the sympathies or excite the passions of a jury. It is his duty to state plainly the law of the case." Pasc. Dig., Art. 3060.

The sentence would not have violated the law on the subject if he had directed the jury to find their verdict upon all the facts and all the circumstances proved on the trial, or such verdict as their enlightened consciences shall commend; if it had been said, such verdict as the evidence warranted.

There is nothing in any other portion of the charge which could have neutralized the effect reasonably made on the minds of the jury by the erroneous charges above pointed out. These erroneous charges enter into the motion for new trial, and are assigned as error. It was error in the court to refuse a new trial, and for this error the judgment of the district court is reversed and the cause remanded.

From the view we have taken of the case it becomes. unnecessary to examine further the grounds set out in the. motion for new trial and in the assignments of error.

*Reversed and remanded.*